SARTAIN, Judge.
These consolidated cases arose out of the same automobile accident between a 1960 Renault and a 1967 Chevrolet. Ben Three-ton and Donald Bordelon, the minor sons *920 of plaintiffs, received injuries when the Renault in which they were traveling was struck from the rear by the Chevrolet. The defendants are Carol Ann Efferson, driver of the Chevrolet, and her liability insurer, the Phoenix Insurance Company (“Phoenix”).
The trial judge found that the plaintiffs had not borne their burden of proving that the accident was caused by any negligence of Miss Efferson and from the judgment dismissing their suits, both plaintiffs have appealed.
Plaintiffs contend that the trial judge erred in his determination relative to the burden of proof and, in the alternative, pray for a remand on the grounds that the trial judge improperly refused to order defendants at trial to produce a written statement given by Miss Efferson to Phoenix a few days after the accident.
We do npt find error in these respects and affirm the judgment of the lower court.
The accident occurred shortly before 1:00 A.M. on September 23, 1967, on the Airline Highway, a four-lane bypass of Baton Rouge at that point. Prior to the accident, both automobiles were proceeding in a westerly direction, with the Renault driven by Ben Threeton with his passenger Donald Bordelon ahead of the Chevrolet driven by Miss Efferson with her passenger Richard Sims. Those four people were the only eye-witnesses to the accident and their accounts are in conflict.
Plaintiffs testified that their Renault had been traveling for some distance in the left or inside lane and that Miss Efferson simply overtook the Renault and struck it from the rear, causing young Threeton to lose control of his car and skid to the right, ultimately resulting in a serious collision between his car and a light standard off the right side of the highway.
The defendants contend that the Renault attempted to pull suddenly to the left from the right or outside lane and that Miss Ef-ferson could not have anticipated such a sudden maneuver and could not have avoided hitting the Renault after she realized that an emergency situation existed in front of her.
All four witnesses recalled seeing a large van truck traveling in the same direction in the right or outside lane, but they were in conflict as to its relative position at the time of the accident. Plaintiffs claim that the Renault had just passed the truck and was in the left lane about a car length or fifteen feet ahead of it when the collision sent the Renault careening across the right lane. Defendant Efferson and her passenger Sims placed the truck some distance ahead of them when they first noticed the Renault, which, they testified, must have pulled out to the left from behind the truck, apparently in an attempt to pass it. They contend that the Renault did careen to the right, but behind the truck rather than in front of it and that the Renault was not yet entirely in the left or inside lane at the point of impact.
The trial judge was of the opinion that all four witnesses were sincere and credible, but doubted that the accident could have occurred in the manner described by plaintiffs. If the Renault had been only slightly in front of the truck, the court reasoned, another collision would have occurred as it was pushed across the right lane in front of the truck.
The trial judge also gave much weight to the testimony of the investigating officers and determined that the physical evidence tended to support the accounts given by Miss Efferson and Mr. Sims.
The officers testified that the total width of the two west-bound lanes was twenty-six feet and that the debris at the point of impact was from one to three feet south of the center line or just inside the left lane. They both stated that only the right front of the Chevrolet was damaged. One officer thought that the left rear of the Renault had been hit and the other of *921 ficer felt that, because of the extensive damage to the Renault when it struck the light standard, the exact damage of the first collision wq® impossible to determine. They found in the left lane thirty-eight feet of skid marks by the Chevrolet in a straight line leading to the point of impact. From there the Renault angled across the right lane a total of 192 feet before jumping the curb and striking the light standard.
We agree with the trial judge that these facts indicate that the Renault was not entirely in the left lane at the point of impact and that it would hardly have been straddling the middle line if it had just passed a large truck and was only a car length ahead of it. Certainly, the physical evidence does not tend to advance the accounts given by plaintiffs and since the testimony of the eye-witnesses is in irreconcilable conflict, we cannot say that the trial judge erred in finding that the plaintiffs had failed to prove the liability of Miss Efferson by a preponderance of the evidence.
Plaintiffs further contend that they were prejudiced at trial by the refusal of the trial judge to compel production by defendants of a written statement given by Miss Efferson to Phoenix a few days after the accident. The request was made for the first time in the waning stages of the trial when Miss Efferson was called on cross-examination by plaintiffs and she admitted having given such a statement. They rely on La.C.C.P. Art. 1492, relative to depositions and motions for discovery and production of documents. The pertinent part of that Article reads as follows:
“Upon motion of any party showing good cause therefor, and subject to the provisions of Article 1452, the court in which an action is pending or in which the judgment was originally rendered may:
(1) Order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Article 1436 and which are in his possession, custody, or control ’ * * % ”
The defendants contend that the statement in question is privileged under La.C. C.P. Art. 1452, which restricts Article 1492 and the pertinent part of which reads as follows:
“Art. 1452. Orders for the protection of parties and deponents
The court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. * * * ”
However, we are of the opinion that the privilege of Article 1452 does not become an issue unless and until a proper and timely request for the document has been made. Indeed, under Article 1492, the moving party must show good cause for requiring the production of a document held by an adverse party and the granting of such a motion is within the discretion of the trial judge by the very language of the Article. Even if plaintiffs’ request for the statement during the cross-examination of Miss Efferson may be construed as a motion to compel production, and without- deciding whether such a motion is necessarily a pre-trial discovery device or contradictory in nature, the only reason for plaintiffs’ request was simply the apparent hope that Miss Efferson’s prior statement would not *922 be entirely consistent with her testimony at trial. Inasmuch as the trial judge described her as a sincere and credible witness and found that the physical evidence supported her testimony, it is clear that the judge did not share that suspicion and did not consider that good cause had been shown for compelling the defendants to produce the prior statement. We cannot say that a denial of the request under these circumstances constituted, an abuse of the discretion vested in the trial judge by C.C. P. Art. 1492.
Lastly, plaintiffs urge that the trial judge improperly denied their motion for a new trial which included affidavits by two persons that Miss Efferson made certain statements against her interest when she visited the injured plaintiffs in the hospital following the accident. It was alleged that two other persons, not known to plaintiffs before trial, would testify that they also heard her make such statements. By refusing to grant the new trial, the court obviously did not consider this testimony to be newly discovered evidence, which the moving party could not have discovered with due diligence before trial, such that peremptory grounds for a new trial existed under La.C.C.P. Art. 1972(2). Indeed, one of the affiants was Henry Bordelon, a plaintiff herein, who did not testify by deposition or at trial due to poor health. The substance of the statements attributed to Miss Efferson by the affiants and their description of her behavior at the hospital indicate that she was quite upset and apologetic about the accident and concerned about the condition of the injured boys. The trial judge did not feel that any comments she may have made relative to her fault or liability under those circumstances would justify the granting of a new trial under La.C.C.P. Art. 1973. We are not of the opinion that the trial judge’s evaluation of these factors constituted an abuse of his discretion to grant or deny a new trial.
For the above and foregoing reasons the judgment of the lower court is affirmed and the request for a remand for a new trial is denied. The costs of this appeal are to be borne by plaintiffs-appellants.
Affirmed.