272 So.2d 32 (1973)
Mary P. SONIER et al.
v.
LOUISIANA POWER & LIGHT CO.
No. 9248.
Court of Appeal of Louisiana, First Circuit.
January 15, 1973.
*33 T. Kenneth Watkins, Houma and J. Wayne Anderson, New Orleans, for defendant-relator, La. Power & Light.
Philip E. Henderson, Houma, for plaintiff-respondent.
John C. Cooper, New Orleans, for defendant-respondent.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
On application of defendant, Louisiana Power & Light Company (Relator), we granted alternative writs to determine the propriety of the lower court's refusal to order production of certain documents for examination by Relator pursuant to our Discovery Statute, particularly LSA-C.C.P. art. 1452. We recall the alternative writs issued and affirm the ruling of the trial court.
On January 7, 1972, plaintiff, Mary P. Sonier, instituted this death action seeking damages on behalf of herself as widow of decedent, Clay Paul Sonier, and three minors, children of the marriage between plaintiff and decedent. Relator was named sole defendant in the action. The petition alleges decedent died May 7, 1971, of injuries received that same date from burns and shock. It is asserted that decedent was standing near a truck on premises of Warren Buildings, Inc. (Warren), on Main Project Road, west of Schriever, in Terrebonne Parish, Louisiana. Decedent, who was working on a construction project for Warren, allegedly placed his hand on a truck being used for construction purposes. While in contact with the truck, the vehicle became charged with electricity when a cable suspended from a gin pole on the truck either contacted or came near a power line which Relator had erected on the construction site. It is alleged Relator erected the power line knowing the area would be used by trucks equipped with gin poles which could come into contact with the line. It is also alleged Relator knew *34 Warren would be erecting its place of business and warehouse on the premises, including certain metal buildings and structures. Allegedly, Relator knew, or should have known, that in the construction process large metal portions of buildings would be installed with the aid of mobile equipment which could likely come in contact with Relator's lines. It is alleged Relator was negligent in failing to insulate its lines, failing to raise the lines high enough to clear equipment to be used in the construction process, and alternatively, failing to bury the line. Relator answered pleading its freedom from negligence and asserting the accident occurred because of decedent's own contributory negligence and assumption of risk. Relator also averred the accident occurred due to the negligence of Kevin H. Azzouz and C. F. Wesche and other directors of Warren.
On March 22, 1972, Relator third partied Azzouz, Wesche and Warren and their alleged insurer, Continental Insurance Company (Respondents). The negligence of Azzouz, Wesche and Warren allegedly consists in their: (1) failing to maintain a proper lookout and observe that which should have been observed under the circumstances; (2) not selecting an alternative route in moving the machinery so as to avoid its use in dangerous proximity to the line and prevent exposing the machine and personnel to the danger of contact; (3) failing to adapt the machinery so that it could pass or move in the area without exposing either the machine or personnel to danger; (4) failing to properly supervise use of the machinery in a safe manner under the circumstances; (5) failure to train and instruct decedent to safely perform his work under the circumstances; (6) failure to devise practical means to avoid such a type accident which was clearly foreseeable, and (7) failure to provide decedent a safe place in which to work.
On April 13, 1972, after institution of Relator's third party demand, a statement was taken from third party defendant Azzouz by an employee of Underwriters Adjusting Company (Underwriters), adjusters for Continental. Also following the above date, certain interoffice memoranda were exchanged between Underwriters' Houma and New Orleans offices. On September 25, 1972, Relator filed a request for a subpoena duces tecum seeking production of any and all reports, memorandums or other written documents made by or on behalf of plaintiff and/or any third party defendants, and any and all statements made by plaintiff or any third party defendant.
Defendant Azzouz was deposed on October 10, 1972, the return date on Relator's request for subpoena duces tecum. On this occasion, counsel for Azzouz disclosed the existence of the April 13, 1972 statement and of office memos exchanged by Underwriters subsequent to the filing of Relator's third party demand. Counsel declined to produce either the statement or memoranda on the ground they were privileged. Relator then moved for production of the documents whereupon Respondents were ruled to show cause why the documents should not be produced. On trial of the rule, it developed that Azzouz had never been shown nor had he read his statement since it was given to refresh his memory for deposition purposes. Respondents contended the statement and memoranda were prepared in anticipation of trial. The trial court denied Relator's motion to produce. In so holding, the Court rejected Relator's contention that Relator could not be held to the duty of proving undue prejudice would result from nonproduction when it had no means of knowing the content of the material, notwithstanding undue prejudice might well exist.
Relator reurges its unsuccessful contentions made in the trial court. It is contended that Respondents failed to establish that the requested statement was taken in preparation for trial or that the memoranda were not ordinary office memoranda as distinguished from material accumulated for trial. Relator argues that Azzouz was never shown the statement since it was given, and there is no evidence of record, *35 other than the declaration of counsel for Respondents, that the statement was taken in preparation for trial. Relator points out the impossibility of its establishing undue prejudice to its cause resulting from failure to produce the documents when it has no means of knowing the content of the requested material without an examination thereof. It is Relator's position that undue prejudice to its cause might well exist, and for that reason, examination should be allowed.
The possibility of undue prejudice to Relator's cause is argued on the ground that Azzouz's deposition shows his present uncertainty concerning important factual issues. Relator points out that in his deposition, Azzouz could not recall the person from whom he bought the truck involved in the accident or to whom the vehicle was subsequently sold. The importance of this information is said to lie in the fact that it might well be that prior owners of the vehicle had similar accidents which might put Azzouz on notice of defects. Relator also claims the present whereabouts of the vehicle is important, although we are not informed for what purpose. It is also contended Azzouz could not recall whether decedent, as an employee of Warren, had been properly briefed and instructed at safety meetings concerning the danger posed by the presence of the line, and in which decedent might have been cautioned and instructed to perform no work near the line. Azzouz's failure to recall is alleged to be vital to Relator's defense. Next, Relator suggests Azzouz was ambiguous regarding his knowledge of federal safety regulations, and their applicability at the time of the accident. Relator assumes Azzouz discussed this aspect of the matter with the adjuster who took Azzouz's statement. Relator opines the matters above alluded to were likely to have been covered in Azzouz's statement which most probably reflected his more accurate recollection thereof considering it was taken six months earlier. Since Azzouz cannot recall, it is Relator's position that the statement is the sole source of the factual information it contains, and denial of the information produces an undue hardship upon Relator because the information is not otherwise available. Finally, Relator argues the statement was not taken by a party to the suit, but by a third party, consequently Respondents have an unfair advantage.
The purpose of our Discovery Statute, LSA-C.C.P. arts. 1421-1515, inclusive, is to afford all parties to litigation a fair opportunity to obtain the pertinent facts. Where facts are readily available, the courts will not permit a party seeking information to embark upon a fishing expedition. Consequently, where witnesses are available who can and will furnish desired information, and when the information is available from other sources, a motion for production of documents will be denied. Self v. Employers Mutual Liability Insurance Company of Wisconsin, La.App., 90 So.2d 547. See also, Geolograph Service Corporation v. Southern Pacific Company, La.App., 172 So.2d 128.
LSA-C.C.P. art. 1452, Par. 2, provides as follows:
"The Court shall not order the production or inspection of any writing obtained or prepared by the adverse party, his attorney, surety, indemnitor, expert, or agent in anticipation of litigation or in preparation for trial unless satisfied that denial of production or inspection will unfairly prejudice the party seeking the production or inspection in preparing his claim or defense or will cause him undue hardship or injustice. The Court shall not order the production or inspection of any part of the writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert."
As noted by Respondents, Article 1452, above, is restrictive in that documents obtained or prepared in anticipation of litigation or readying for trial shall not be ordered produced unless the party seeking production can show that failure to produce will result in unfair prejudice to him or *36 cause him undue hardship or injustice. Nevertheless, to deny production, the party from whom production is sought must establish that the documents were indeed obtained in anticipation of litigation or preparation for trial.
We find that Respondents have shown that Azzouz's statement was not only obtained in anticipation of litigation, but also in preparation of his answer to and defense of an action then pending against him, and others with whom he had a common interest. When the statement was taken, it was incumbent upon Continental, also then named a third party defendant, to answer the demand brought against its insured, Azzouz. This could not be done until Azzouz's version of the incident was determined by obtaining from him a statement. Respondents seek to establish the point that once an action is filed, every statement thereafter taken is necessarily taken in anticipation of litigation or preparation for trial. We are not inclined to establish such a broad rule. We believe there may well be circumstances wherein statements taken after institution of litigation may not fall within the exemption provided by Article 1452, above. We find, however, that in this instance the statement in question was taken in preparation of an answer to a pending demand and, as such, comes within the purview of Article 1452, above.
We likewise reject Relator's contention that the determination of whether denial of production will cause undue hardship or injustice cannot be made until the documents are examined. Literal application of such a rule would completely nullify the exemption clearly provided by Article 1452, above. To so hold would establish the rule that any document obtained by an adverse party could be examined by the party seeking production on the ground that the right exists to examine everything an opponent has to determine whether it falls within the exception provided by Article 1452. We find such a position clearly contrary to Article 1452, above.
We likewise find that subject statement comes within the requirement of Article 1452, above, in that it was taken by the agent of an adverse party. It is shown that Underwriters handles claims for Continental, and that in such capacity, an employee of Underwriters took Azzouz's statement. It suffices to say that this satisfies the agency requirement of the applicable article.
The duty therefore devolved on Relator to show that denial of production of Azzouz's statement would cause Relator undue hardship or result in injustice. Relator has failed to make such a showing. As regards the information sought concerning the purchase and sale of the truck involved, Azzouz's deposition shows he had no independent recollection thereof. It does not appear knowledge of these circumstances lay exclusively with Azzouz. It also appears likely that such information may be obtained by interrogatories addressed to other employees of Warren or even from Warren's own records, which, as to this subject matter, are clearly amenable to production. The contention that the statement given by Azzouz to Underwriter's adjuster may have touched upon this matter is pure speculation upon Relator's part.
As regards Azzouz's knowledge of Federal regulations, it appears that upon his deposition, he was examined in detail in this area. The only practical purpose his statement might serve would perhaps be to show prior inconsistent statements in this regard. Our jurisprudence proscribes production of documents merely in the hope it might contradict a witness or litigant. Bordelon v. Phoenix Insurance Co., La. App., 244 So.2d 919.
We reject Respondent's contention that all interoffice memoranda, dated subsequent to institution of the third party demand, fall within the exception of Article 1452. We repeat, we find it is not the date or time of the document which controls, but rather the content, nature and purpose thereof. We find, however, that Relator *37 has failed to allege or establish a specific need, purpose or right to such memoranda. Instead, Relator merely asserts, in effect, that as a matter of law, it is entitled to examine all interoffice memoranda prepared by Continental in reference to Relator's third party demand, to determine their relevancy to the issues involved. This amounts to a fishing expedition pure and simple, which is not allowed. Self v. Employers, above.
It is ordered, adjudged and decreed that the judgment of the trial court denying Relator's motion to produce is affirmed.
It is further ordered, adjudged and decreed that the alternative writs of certiorari, mandamus and prohibition issued herein be recalled and set aside, and the application of Relator for such writs be denied, at Relator's cost.
Application denied.